**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| DEE GRUVER,<br>　　PLAINTIFF,<br><br>v.<br><br>McKAROUS GROUP LLC,<br>COB FINANCIAL LLC,<br>SCHERWIN & ASSOCIATES, LLC<br>PRINCIPAL ONE GROUP LLC<br>AMERICANA FINANCIAL SERVICES LLC<br>DAVID BROWN d/b/a "AMERICANA FINANCIAL SERVICES"<br>DAVID BROWN, individually,<br>CAROLINA DONSHAY, individually,<br>SERENA LOPEZ (a/k/a SERENA CARINO), individually, and<br>SHERMAN CHANNING HUMPHREY III,<br>　　DEFENDANTS | Case No.<br><br>1:23-cv-110 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Dee Gruver ("Plaintiff"), by and through her undersigned counsel, brings this lawsuit against by McKarous Group LLC ("McKarous"), COB Financial LLC ("COB"), Scherwin & Associates, LLC ("Scherwin"), Principal One Group LLC ("POG") Americana Financial Services LLC ("AFS"), David Brown d/b/a "Americana Financial Services" and David Brown individually ("Brown") and Serena Lopez ("Lopez") and Carolina Donshay ("Donshay") and Sherman Channing Humphrey III ("Humphrey"):

## NATURE OF ACTION

1. This action arises out of violations of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, the Texas Finance Code § 392.001, et seq., and the State of California Rosenthal

Fair Debt Collection Practices Act (hereinafter "RFDCPA"), California Civil Code at §§ 1788, et seq.

2. Defendants are subject to the collection laws of the state of California because Defendants were located in and residents of the state of California at all times relevant hereto and Defendants' actions were directed at Plaintiff from Defendants' location in California.

3. Defendants are subject to the collection laws of the state of Texas because Plaintiff was located in the state of Texas at all times relevant hereto.

4. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

5. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 (a) and 28 U.S.C. § 1391(b), in that one or more defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

7. Plaintiff resides in this District.

## PARTIES

8. Plaintiff, Dee Gruver ("Plaintiff"), is an adult individual residing in Liberty County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1), is a "person" as that term is defined by California Civil Code § 1788.2(g), and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

10. Plaintiff is a "debtor" as defined by Cal. Civ. Code § 1788.2(h).

11. McKarous is a Nevada LLC.  According to information on documents received from McKarous, and according to information filed with the Nevada Secretary of State, the principal office for McKarous is at 1180 N Town Center Dr Ste 100, Las Vegas, NV, 89144.

12. In addition to its registered office in Nevada, McKarous also has offices, employees and senior management located in California. Almost all of the McKarous operations are conducted from its location in California, and, on information and belief, all of the conduct directed at Plaintiff described below was directed at Plaintiff from California.

13. McKarous may be served through its registered agent, United States Corporation Agents, Inc. at 500 N. Rainbow Blvd., Suite 300 A, Las Vegas, NV 89107, or in accordance with Nevada, California or Texas law.

14. As will be described below, McKarous received placement of a defaulted consumer account for the purpose of collecting that account and communicated with Plaintiff for the purpose of collecting that account and received payment from Plaintiff on that account.

15. The principal purpose of McKarous is the collection of debts using the mails and telephone and other means.

16. McKarous regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

17. McKarous is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by

Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

18. McKarous, in the ordinary course of business, regularly, and on behalf of itself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

19. On information and belief, Principal One Group LLC is a sister company of McKarous, sharing common ownership in part or in whole, and used for the purpose of masking the financial affairs of McKarous.

20. POG is a California LLC with principal offices reportedly situated at 1940 N. Sage Ave., Rialto, CA  92376, according to its most recent filing with the California Secretary of State.

21. POG may be served through its registered agent, Legalcorp Solutions, Inc. in California, or in accordance with California or Texas law.

22. As will be described below, POG received placement of a defaulted consumer account for the purpose of collecting that account and communicated with Plaintiff for the purpose of collecting that account and received payment from Plaintiff on that account.

23. The principal purpose of POG is the collection of debts using the mails and telephone and other means.

24. POG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

25. POG is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

26. POG, in the ordinary course of business, regularly, and on behalf of itself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

27. Carolina Donshay is an individual who resides at, or recently resided at, or is otherwise associated with the address of 1940 N. Sage Ave., Rialto, CA 92376.

28. Donshay is the owner of McKarous and POG.

29. As will be described below, Donshay directed the policies of McKarous and POG in such as a way as to receive payment from Plaintiff on a defaulted account and profited from the collection of that account.

30. The principal purpose of Donshay's activities through McKarous and POG is the collection of debts using the mails and telephone and other means.

31. Donshay regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

32. Donshay is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

33. Donshay, in the ordinary course of business, regularly, and on behalf of himself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

34. Scherwin & Associates, LLC is a Delaware LLC, with its principal office located at 9431 Haven Avenue, Suite 100, Rancho Cucamonga, CA 91703 according to its most recent filing with the California Secretary of State.

35. Scherwin may be served through its registered agent, Corporation Service Company doing business in California as CSC-Lawyers Incorporating Service, or in accordance with California or Texas law.

36. As will be described below, Scherwin received placement of a defaulted consumer account for the purpose of collecting that account and received payment from Plaintiff on that account.

37. The principal purpose of Scherwin is the collection of debts using the mails and telephone and other means.

38. Scherwin regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

39. Scherwin is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

40. Scherwin, in the ordinary course of business, regularly, and on behalf of itself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

41. On information and belief, COB Financial LLC is a sister company of Scherwin, sharing common ownership in part or in whole, and used for the purpose of masking the financial affairs of Scherwin.

42. COB is a California LLC with principal offices reportedly situated at 11801 Pierce Street, Suite 200, Riverside, CA  92505, according to its most recent filing with the California Secretary of State.

43. COB may be served through its registered agent, Legalcorp Solutions, Inc. in California, or in accordance with California or Texas law.

44. As will be described below, COB received placement of a defaulted consumer account for the purpose of collecting that account and received payment from Plaintiff on that account.

45. The principal purpose of COB is the collection of debts using the mails and telephone and other means.

46. COB regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

47. COB is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

48. COB, in the ordinary course of business, regularly, and on behalf of itself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

49. Americana Financial Services LLC is a Wyoming LLC with principal offices reportedly situated at 312 W. 2nd St. #1406, Casper, WY 82601, according to its most recent filing with the Wyoming Secretary of State.

50. In addition to its registered office in Wyoming, AFS also has offices, employees and senior management located in California. Almost all of the AFS operations are conducted from its location in California, and, on information and belief, all of the conduct directed at Plaintiff described below was directed at Plaintiff from California.

51. AFS may be served through its registered agent, United States Corporation Agents, Inc. at 1623 Central Ave., Suite 18, Cheyenne, WY 82001, or in accordance with Wyoming, California or Texas law.

52. As will be described below, AFS received placement of a defaulted consumer account for the purpose of collecting that account and received payment from Plaintiff on that account.

53. The principal purpose of AFS is the collection of debts using the mails and telephone and other means.

54. AFS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

55. AFS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

56. AFS, in the ordinary course of business, regularly, and on behalf of itself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

57. David Brown is an individual who resides in or about Hesperia, California.  He has associated with the address Yucca Street, Hesperia, CA 92345, but this is not believed to be his residence.

58. Brown is a co-owner of Scherwin, COB and AFS.

59. As will be described below, Brown directed the policies of Scherwin, COB, AFS, McKarous and POG in such as a way as to receive payment from Plaintiff on a defaulted account and profited from the collection of that account.

60. The principal purpose of Brown's activities through Scherwin, COB, AFS, McKarous and POG is the collection of debts using the mails and telephone and other means.

61. Brown regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money,

property or services which are the subject of the transactions are primarily for personal, family or household purposes.

62. Brown is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

63. Brown, in the ordinary course of business, regularly, and on behalf of himself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

64. In addition to the AFS formally registered as an LLC in Wyoming, David Brown, an individual, registered a fictitious business name for himself, a sole proprietorship, under the same name "Americana Financial Services" in San Bernardino County, California. On information and belief these are the same operation, sharing employees, management and clients and co-mingles funds. The sole proprietorship and the LLC are essentially one and the same. The liability of one is the liability of the other.

65. Serena Lopez is a natural person, who resides at, or recently resided at, or is otherwise associated with the address at, 22265 Pico St., Grand Terrace CA 92313.

66. Lopez also is known by her married name of, or is otherwise associated with the name of, Serena Carino.

67. Lopez is the Chief Executive Officer and/or owner of Scherwin.

68. As will be described below, Lopez directed the policies of Scherwin, COB, McKarous and POG in such as a way as to receive payment from Plaintiff on a defaulted account and profited from the collection of that account.

69. The principal purpose of Lopez's activities through Scherwin, COB, McKarous and POG is the collection of debts using the mails and telephone and other means.

70. Lopez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

71. Lopez is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

72. Lopez, in the ordinary course of business, regularly, and on behalf of himself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

73. Sherman Channing Humphrey III is a natural person, who resides at, or recently resided at, or is otherwise associated with the address at, 14922 Ansley Ct., Moreno Valley, CA 92555.

74. Humphrey is a member and/or manager of Scherwin.

75. As will be described below, Humphrey directed the policies of Scherwin, COB, McKarous and POG in such as a way as to receive payment from Plaintiff on a defaulted account and profited from the collection of that account.

76. The principal purpose of Humphrey's activities through Scherwin, COB, McKarous and POG is the collection of debts using the mails and telephone and other means.

77. Humphrey regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

78. Humphrey is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

79. Humphrey, in the ordinary course of business, regularly, and on behalf of himself and others, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b) and is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

## FACTUAL ALLEGATIONS

80. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account").  Specifically, the account is alleged to be a debt owed or formerly owed to Capital One Bank or Household Finance, the funds from which were used for various personal effects, but not for any business or commercial purpose whatsoever.

81. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and by Cal. Civ. Code § 1788.2(d) and constitutes a "consumer debt" as that term is defined by Cal. Civ. Code §1788.2(f) and Tex. Fin. Code § 392.001(2).

82. The Account allegedly defaulted more than 10 years ago.

83. Plaintiff admits the existence of the Account, but disputes the amount defendants attempted to collect from her.

84. Plaintiff requests that Defendants cease all further communications regarding the Account.

85. After the Account allegedly defaulted, the Account was purchased, placed with, or otherwise transferred to Scherwin, COB, AFS, Brown, Lopez and Humphrey for the purpose of collecting the Account to make a profit.

86. Scherwin, COB, AFS, Brown, Lopez and Humphrey, to avoid easy detection for the fraud that would be hurled at Plaintiff, placed or otherwise transferred the account to McKarous, POG and Carolina to directly communicate the fraudulent threats described below to Plaintiff for the purpose of coercing payment from Plaintiff.

87. Scherwin, COB, AFS, Brown, Lopez and Humphrey were aware of, relied upon, hoped for, profited from, ratified and instructed and/or encouraged, McKarous, POG and Carolina to act in an illegal manner in order to secure payment from Plaintiff.

**RICO Enterprise**

88. During the entire course of the collection efforts against Plaintiff, Brown, Lopez and Humphrey were the owners of Scherwin and COB and had active control or operation of the management of Scherwin and COB by instructing the employees of Scherwin and COB in the course of their employment/agency with Scherwin and COB.

89. During the entire course of the collection efforts against Plaintiff, Brown was the owner of AFS and had active control or operation of the management of AFS by instructing the employees/agents of AFS in the course of their employment/agency with AFS.

90. Scherwin, COB, AFS, Brown, Lopez and Humphrey hired Carolina, McKarous and POG to call Plaintiff and falsely threaten her with being sued in order to scare her into paying McKarous, and, in turn, POG, Carolina, Scherwin, COB, AFS, Brown, Lopez and Humphrey.

91. Carolina taught all employees of McKarous and POG the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees of McKarous and POG.

92. This type of fraud was not new to Carolina.  In 2005, Carolina was indicted for, and plead guilty to, federal felony bank fraud charges.  Carolina "knowingly and intentionally executed a scheme and artifice to defraud financial institutions" using a counterfeit check scheme he orchestrated.  *See U.S.A. v. Donshay Carolina*, Dist. New Mexico, no. 05-180.

93. Scherwin, COB, AFS, Brown, Lopez and Humphrey also taught all employees of McKarous, POG and Carolina the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees of McKarous, POG and Carolina.

94. During the entire course of the collection efforts against Plaintiff, Scherwin, COB, AFS, Brown, Lopez, Humphrey, McKarous, POG and Carolina acted in association with each other, regarding the conduct toward Plaintiff described below by providing accounts to collect, instruction on techniques to use to coerce payment, by showing up to the Scherwin, COB, AFS, McKarous and POG office(s) to work and by using Scherwin, COB, AFS, McKarous and POG equipment and by assisting Scherwin, COB, AFS, McKarous and POG in obtaining revenue.

95. Scherwin, COB, AFS, McKarous and POG are each a legal entity, separate and distinct from all other defendants and separate and distinct from the association of all other defendants.

96. Scherwin, COB, AFS, McKarous and POG were the avenues through which Brown, Lopez, Humphrey and Carolina conducted their operation.

97. Scherwin, COB, AFS, McKarous and POG served as the receptacle of all monies fraudulently obtained, or attempted to be obtained by fraudulent means, as described below.

98. Scherwin and COB were governed by Brown, Lopez and Humphrey and required one or more of Scherwin's and COB's employees to act in the fraudulent manner described below in order to obtain revenue.

99. AFS was governed by Brown and required one or more of AFS's employees to act in the fraudulent manner described below in order to obtain revenue.

100.    McKarous and POG were governed by Carolina and required one or more of McKarous' and POG's employees to act in the fraudulent manner described below in order to obtain revenue.

101. Scherwin, COB, AFS, Brown, Lopez, Humphrey, McKarous, POG and Carolina conspired to use McKarous' and Scherwin's and COB's employees to act in the fraudulent manner described below in order to obtain revenue.

102. The interactions of any two or more of the defendants as described in paragraphs 79-99 above establish the existence of an "enterprise" as defined in 18 U.S.C. § 1961(4).

**Fraudulent Collection Practices**

103. During the one year prior to the filing of this complaint, McKarous called Plaintiff and Plaintiff's daughter in its attempts to collect the debt from Plaintiff.

104. The debt McKarous attempted to – and did – collect from Plaintiff had been in default for more than 10 years.  All legal enforcement actions were barred by the applicable statute of limitations.

105. The age of the Account, however, did not prevent McKarous from using the threat of a lawsuit to scare Plaintiff into submission.

106. McKarous left a message for Plaintiff's daughter which stated:

> Good afternoon, this a very urgent message for Dee Gruver. My name is James Carter, and I'm calling from the office of document delivery services. Reaching out today on the notice of intent advising you of a pending certified document in our office. Due to no contact on your behalf, you are instructed to call (888) 671-3105. When you call in reference file number 221475.

107. This was an unauthorized disclosure of the debt to Plaintiff's daughter.  McKarous did not have Plaintiff's consent to discuss her Account with her daughter.

108. The information included in the voicemail was intended by McKarous to be communicated to Plaintiff by her daughter.

109. Plaintiff shared the voicemail with Plaintiff.

110. Plaintiff was humiliated and embarrassed to learn that her daughter knew about her defaulted account.

111. McKarous also left a voicemail for Plaintiff which stated:

> Good afternoon. This is a very urgent message for Dee Gruver. My name is James Carter, and I'm calling from the office of document delivery services. Reaching out today on the notice of intent advising of pending certified document in our office. Due to no contact on your behalf, you are instructed to call (888) 671-3105. Please be advised, if you do not make contact today, this office will move forward without your participation or acknowledgement. Once again, the number to call is (888) 671-3105. File number 221450.

112. McKarous also sent Plaintiff a text message which stated:

> RECIPIENT: DEE GRUVER
> DOB: 05/27/1961
> CARRIER: GLOBAL LOCATING SERVICE (GLS LLC)
> PHONENUMBER:888-471-4723
>
> CASE NUMBER: 221475
> EXPLANATION
> NOTICE OF ATTEMPT TO DELIVER - 01/04/2022 (NO SIGNATURE PRESENT)
>
> ATTENTION:
> OUR OFFICE HAS BEEN RETAINED TO INITIATE PRELIMINARY ARTICLES OF INTENT BEING FILED AGAINST THE AFOREMENTIONED INDIVIDUAL IN YOUR LOCAL JURISDICTION.
>
> WE'VE UNSUCCESSFULLY ATTEMPTED POSTAL CORRESPONDENCE TO THE ADDRESS WE HAVE ON FILE. OUR FINAL ATTEMPT TO SERVE WILL BE AT YOUR VERIFIED PLACE OF EMPLOYMENT. PROCEEDINGS WILL BE SET WITHIN 72 HOURS
>
> TO DISCONTINUE, RESOLVE OR ENTER STIPULATION OF AGREEMENT, MAKE CONTACT WITH OUR FIRM AT: 888-471-4723
>
> FAILURE TO MAKE CONTACT COULD RESULT IN PROCEEDINGS WITHOUT YOUR CONSENT.

113. After receiving the voicemail, text message and after being told by her daughter of the message her daughter received, Plaintiff spoke with McKarous on the phone about the Account.

114. In this live call, McKarous told Plaintiff that it would sue her and that the normal statute of limitations did not apply to this Account because there was a tolling agreement between the parties.

115. McKarous sent Plaintiff an email with a "Mutual Release and Settlement" attached thereto. Language in this Mutual Release and Settlement stated that if Plaintiff failed to make the $2,559.26 payment on the 10+ year old debt, McKarous would "continue to escalate as originally stated in accordance with state law" and also states that "if it is necessary to collect the indebtedness though litigation pursuant to Civil Code Civil Code § 1717, you are hereby notified that our client does demand payment of attorney's fees and your obligation under your agreement in this regard shall be enforced." (errors in original.)

116. The statements conveyed to Plaintiff by McKarous in the voicemails and text message and live call and email described above were false, misleading and deceptive. Specifically, it was not an "urgent message", there were no documents being delivered, there was no "notice of intent advising of pending certified document", and McKarous would not "move forward without [Plaintiff's] participation." Also, there McKarous was not "retained to initiate preliminary articles of intent" or to "file[] against the [Plaintiff] in your local jurisdiction" and there would be no "attempt to serve" and Plaintiff's place of employment "within 72 hours" and there would be no "proceedings without [Plaintiff's] consent" if she did not repay the Account. Further, there was no tolling agreement and the statute of limitations did apply. Also, there was no escalation that McKarous could initiate and it could not obtain attorneys fees as threatened.

117. These statements would make the least sophisticated consumer believe that a lawsuit had been or would be started to collect the Account and that the only way for Plaintiff to avoid the perils of such a lawsuit would be for Plaintiff to repay the Account.

118. These statements made Plaintiff believe that a lawsuit had been or would be started to collect the Account and that the only way for Plaintiff to avoid the perils of such a lawsuit would be for Plaintiff to repay the Account.

119. Plaintiff was told she would be sued in civil court and taken to criminal court as well.

120. Plaintiff was told that a process server was looking for her and would soon deliver the paperwork needed to take her to civil and criminal court.

121. The threats to sue Plaintiff described above were false representations as McKarous had not filed suit against Plaintiff, there was no legal action, no criminal charges were going to be filed and there was no process server looking for Plaintiff to serve her paperwork.

122. McKarous had no intention of suing Plaintiff or pursuing criminal charges at the time it made these representations.

123. In order to avoid the threatened perils, Plaintiff paid McKarous $2,559.26.

124. When the money was withdrawn from Plaintiff's bank account, it was withdrawn by co-defendant and co-conspirator COB.

125. McKarous failed to ever provide Plaintiff with notice of her rights to dispute the validity of the debt in question.

126. McKarous filed to identify itself as a debt collector and failed to inform Plaintiff that it was attempting to collect a debt and that any information would be used for the purpose of debt collection.

127. McKarous intended for Plaintiff to suffer extreme anxiety and fear as a result of all of the communications directed to her.

128. The purpose for which the defendants intended to cause Plaintiff's extreme anxiety and fear was to coerce a payment from Plaintiff on the Account.

129. The telephone calls each constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

130. The only reason that McKarous and/or representative(s), employee(s) and/or agent(s) of McKarous made telephone call(s) to Plaintiff was to attempt to collect the Account.

131. The statements and actions of McKarous and its representative(s), employee(s) and/or agent(s) constitute illegal communication in connection with debt collection and violate 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(2)&(3)&(4)& (5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692g.

132. All of the conduct by McKarous and/or its employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

133. As a consequence of McKarous' collection activities and communication(s), Plaintiff seeks damages pursuant to 15 U.S.C. § 1692k(a).

134. McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey conducted all of their collection efforts described above without a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code § 392.101.

135. During all times pertinent hereto, Carolina (a) created the collection policies and procedures used by McKarous and POG, and their respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of McKarous and POG, (c) oversaw

the application of the collection policies and procedures used by McKarous and POG

and their respective employees and agents, (d) drafted, created, approved and ratified

the tactics and scripts used by McKarous and POG and their respective employees and

agents to collect debts from consumers, including the tactics and scripts that were used

to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e)

ratified the unlawful debt collection practices and procedures used by McKarous and

POG and their respective employees and agents in connection with their common

efforts to collect consumer debts, and (f) had knowledge of, approved, participated in,

ratified and benefitted financially from the unlawful debt collection practices used by

McKarous and POG and their respective employees and agents in attempts to collect an

alleged debt from Plaintiff as alleged in this complaint.

136. Carolina knew that McKarous and POG repeatedly or continuously engaged in

collection practices as described above.

137. Carolina acted at all times mentioned herein personally and through the employee(s) of

McKarous and POG.

138. McKarous and POG and Carolina, and their respective agents and employees, knew

that the information provided to Plaintiff was false.

139. McKarous and POG and Carolina and their respective agents and employees told

Plaintiff the above false information in order to trick, deceive and manipulate Plaintiff

into transmitting money to McKarous (and indirectly to POG and Carolina as well).

140. The use of telephones by McKarous and POG and Carolina and their respective agents

and employees to transmit the false information and to carry out their scheme to

defraud Plaintiff into paying them money as described above via wires constitutes wire fraud in violation of 18 U.S.C. § 1343.

141.   During all times pertinent hereto, Brown, Lopez and Humphrey (a) created the collection policies and procedures used by Scherwin, and COB, and their respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Scherwin and COB, (c) oversaw the application of the collection policies and procedures used by Scherwin and COB and their respective employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Scherwin and COB and their respective employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Scherwin and COB and their respective employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by Scherwin and COB and their respective employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

142.   During all times pertinent hereto, Brown (a) created the collection policies and procedures used by AFS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of AFS, (c) oversaw the application of the collection policies and procedures used by AFS and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by AFS and its employees and agents to collect

debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by AFS and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by AFS and its respective employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

143.  Brown, Lopez and Humphrey knew that Scherwin, COB and AFS repeatedly or continuously engaged in collection practices as described above.

144.  Brown, Lopez and Humphrey acted at all times mentioned herein personally and through the employee(s) of Scherwin, COB and AFS.

145.  Scherwin, COB, AFS, Brown, Lopez and Humphrey, and their respective agents and employees, knew that the information McKarous, POG and Carolina provided to Plaintiff (and others) was false.

146.  Scherwin, COB, AFS, Brown, Lopez and Humphrey and their respective agents and employees conspired with McKarous, POG and Carolina to tell Plaintiff the above false information in order to trick, deceive and manipulate Plaintiff into transmitting money to McKarous and COB (and indirectly to Scherwin, AFS, POG, Brown, Lopez Humphrey and Carolina as well).

147.  The use of telephones and payment processors and the banking system by Scherwin, COB, AFS, Brown, Lopez and Humphrey and their respective agents and employees to transmit the false information and to carry out their scheme to defraud Plaintiff into

paying them money as described above via wires constitutes wire fraud in violation of 18 U.S.C. § 1343.

## **RESPONDEAT SUPERIOR**

148. The representative(s) and/or collector(s) at McKarous were employee(s) and/or agents of McKarous at all times mentioned herein, were acting within the course and/or scope of their employment at all times mentioned herein, and were under the direct supervision and control of McKarous at all times mentioned herein.

149. The actions of the representative(s) and/or collector(s) at McKarous are imputed to their employer, McKarous.

150. The representative(s) and/or collector(s) at POG were employee(s) and/or agents of POG at all times mentioned herein, were acting within the course and/or scope of their employment at all times mentioned herein, and were under the direct supervision and control of POG at all times mentioned herein.

151. The actions of the representative(s) and/or collector(s) at POG are imputed to their employer, POG.

152. The representative(s) and/or collector(s) at Scherwin were employee(s) and/or agents of Scherwin at all times mentioned herein, were acting within the course and/or scope of their employment at all times mentioned herein, and were under the direct supervision and control of Scherwin at all times mentioned herein.

153. The actions of the representative(s) and/or collector(s) at Scherwin are imputed to their employer, Scherwin.

154. The representative(s) and/or collector(s) at COB were employee(s) and/or agents of COB at all times mentioned herein, were acting within the course and/or scope of their

employment at all times mentioned herein, and were under the direct supervision and control of COB at all times mentioned herein.

155. The actions of the representative(s) and/or collector(s) at COB are imputed to their employer, COB.

156. The representative(s) and/or collector(s) at AFS were employee(s) and/or agents of AFS at all times mentioned herein, were acting within the course and/or scope of their employment at all times mentioned herein, and were under the direct supervision and control of AFS at all times mentioned herein.

157. The actions of the representative(s) and/or collector(s) at AFS are imputed to their employer, AFS.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.

158. Paragraphs 1-157 are incorporated into this Count as if set forth in full.

159. McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey violated and 15 U.S.C. § 1692c(b) and § 1692d(2)&(6) and 1692e(2)&(3)&(4)&(5)& (7)&(8)&(10)&(11) and § 1692g(a) by:

    a.  Communicating with Plaintiff's daughter about the false legal trouble Plaintiff was in because of the debt;

    b.  Implying and/or directly stating to Plaintiff that a lawsuit had been or would be filed against her;

    c.  Implying and/or directly stating to Plaintiff that McKarous was a law firm;

    d.  Implying and/or directly stating that Plaintiff would face criminal prosecution;

    e.  Implying and/or directly stating that involuntary enforcement measures such as garnishment and/or liens would be used to recover the amount of the Account;

    f.  Threatening to have a process server show up and serve Plaintiff with legal paperwork;

    g.  Failing to inform Plaintiff that it was a debt collector and that it was attempting t collect a debt and that any information would be used for the purpose of debt collection;

    h.  Failing to inform Plaintiff of her right to dispute the debt and/or request validation of the debt;

160.  Plaintiff suffered actual damages in the form of economic damages and emotional distress as a proximate result of the actions or inactions of McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey.

161.  Pursuant to 15 U.S.C. § 1692k Plaintiff seeks actual and statutory damages, reasonable attorney's fees and costs from McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey.

## COUNT II:  VIOLATIONS OF RICO ACT, 18 U.S.C. § 1961, et seq.

162.  Paragraphs 1-157 are incorporated into this Count as if set forth in full.

163.  As described above, Carolina was a person employed or associated with McKarous and POG, each a "person" and an enterprise unto itself; and Brown, Lopez and Humphrey were persons employed or associated with Scherwin and COB, each a "person" and an enterprise unto itself; and Brown was a person employed or associated with AFS, each a "person" and an enterprise unto itself.

164.  The workings together of defendants McKarous, POG, Scherwin, AFS, COB, Carolina, Brown, Lopez and Humphrey formed the enterprise required by 18 U.S.C. § 1961(4).

165. The activities described in paragraphs 79-145 above affected interstate commerce because the activities caused or attempted to cause money to move from the possession of one or more persons across state lines to McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey.

166. As described above, McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey participated in the conduct of the enterprise's affairs.

167. McKarous on multiple occasions as described above, conveyed false information to Plaintiff via telephone wires across state lines over a long period of time in order to defraud Plaintiff into paying money to McKarous, COB, Scherwin, POG and AFS, and thus established a pattern of racketeering activity.

168. Plaintiff's description of the collection practices employed by McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey described above is but one account of the thousands of similar frauds committed by McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey in fraudulently obtaining money from residents of Texas and many other states over a period of years.

169. The conduct of McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey establish violations of 18 U.S.C. § 1962(c).

170. Pursuant to 18 U.S.C. § 1964(a), Plaintiff seeks an appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a).

171. Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks actual and triple damages as well as reasonable attorneys fees and costs.

## COUNT III:  VIOLATIONS OF THE TEXAS FINANCE CODE § 392.001, et seq.

172.  Paragraphs 1-157 are incorporated into this Count as if set forth in full.

173.  McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey

   violated Tex. Fin. Code § 392.101 by not having a surety bond on file with the Texas

   Secretary of State.

174.  McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey

   violated Tex. Fin. Code § 392.301(a)(2)&(5)&(6) by telling and/or implying to Plaintiff

   that charges had been or would be filed against her if the Account was not repaid.

175.  By implying or stating that Plaintiff would be sued, despite the fact that the debt was

   merely past-due, and was so old that the statute of limitation barred suit to enforce the

   Account, suit had not been filed and McKarous, POG, Scherwin, COB, AFS, Carolina,

   Brown, Lopez and Humphrey had no intention of filing suit against Plaintiff,

   McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey

   misrepresented the character and/or nature of the debt and violated Tex. Fin. Code §

   392.304(a)(8) in doing so.

176.  By implying or stating that a process server was coming to serve Plaintiff and/or

   imitating that the caller was speaking to attorneys about Plaintiff's account, despite the

   fact that McKarous was not a law firm and does not sue consumers for past-due

   accounts, McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and

   Humphrey misrepresented the nature of their services and violated Tex. Fin. Code §

   392.304(a)(14)&(16)&(17) in doing so.

177. All of the statements from McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey described above were false and deceptive and, thus, violated Tex. Fin. Code § 392.304(a)(19).

178. Plaintiff suffered actual damages in the form of economic damages and emotional distress as a proximate result of the actions or inactions of McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey.

179. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey.

180. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey, enjoining each from future conduct in Texas as described above.

## COUNT IV:  VIOLATIONS OF THE CALIFORNIA CIVIL CODE

181. Paragraphs 1-157 are incorporated into this Count as if set forth in full.

182. McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey violated Cal. Civ. Code § 1788.10(e) and § 1788.11(b) and §1788.13(a)&(b)&(e)& (f)&(h)&(i)&(j) and 1788.16 and 1788.17.

183. Pursuant to Cal. Civ. Code § 1788.30, Plaintiff seeks damages, reasonable attorney's fees and costs from McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey violated.

## COUNT V:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)

184. Paragraphs 1-157 are incorporated into this Count as if set forth in full.

185. McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey engaged in extreme and outrageous conduct by falsely stating or implying that Plaintiff had been sued or would be sued and that Plaintiff would face criminal charges if the Account was not immediately repaid.

186. McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey conspired with each other to invade Plaintiff's privacy as described above.

187. The conduct of McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey as described above was intentional and it intruded on Plaintiff's solitude, seclusion, or private affairs in such a way that would be highly offensive to a reasonable person.

188. Plaintiff suffered serious emotional distress as a result of the conduct of McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey in that she suffered severe emotional distress, anxiety and fear.

## COUNT VI:  EXEMPLARY DAMAGES

189. Paragraphs 1-157 are incorporated into this Count as if set forth in full.

190. Exemplary damages should be awarded against McKarous, POG, Scherwin, COB, AFS, Carolina, Brown, Lopez and Humphrey because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice and/or gross negligence.

## JURY TRIAL DEMAND

191.  Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

192.  Judgment in favor of Plaintiff and against McKarous Group LLC, COB Financial LLC, Scherwin & Associates, LLC, Principal One Group LLC, Americana Financial Services LLC, David Brown d/b/a "Americana Financial Services" and David Brown individually, Serena Lopez, Carolina Donshay, and Sherman Channing Humphrey III, jointly and severally, as follows:

    i.  Actual damages in the form of economic damages and emotional distress pursuant to 15 U.S.C. 1692k(a)(1);

    j.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    k.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    l.  Treble actual damages pursuant to 18 U.S.C. § 1964(c);

    m. Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    n.  An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    o.  Permanently enjoin each defendant following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

    p.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

q.  Exemplary damages pursuant to the common law of Texas, see, e.g.

*Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App.

1996);

r.  Statutory damages in the amount of not less than $100 nor greater than

$1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

s.  Reasonable attorneys fees and costs pursuant to Cal. Civ. Code § 1788.30(c);

and

t.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THEWOODFIRM,PLLC

/s/ Jeffrey D. Wood_____
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103, PMB 208
Little Rock, AR  72223
TEL:  214-914-8374
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff